Rosemary M. Rivas (SBN 209147)
rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW SCIABACUCCHI, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SCICLONE PHARMACEUTICALS, INC., JON S. SAXE, FRIEDHELM BLOBEL, NANCY T. CHANG, RICHARD J. HAWKINS, GREGG ANTHONY LAPOINTE, SIMON LI, SILVER BIOTECH INVESTMENT LIMITED, and SILVER DELAWARE INVESTMENT LIMITED,<br><br>Defendants. | Case No. 3:17-cv-04799<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by and through his attorneys, alleges upon personal knowledge as to himself, and upon information and belief based upon, among other things, the investigation of counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1. This action stems from a proposed transaction announced on June 8, 2017 (the "Proposed Transaction"), pursuant to which SciClone Pharmaceuticals, Inc. ("SciClone" or the "Company") will be acquired by Silver Biotech Investment Limited ("Parent") and its wholly-owned subsidiary, Silver Delaware Investment Limited ("Merger Sub," and together with Parent, "Silver"), which were formed by a consortium consisting of entities affiliated with GL Capital

Management GP Limited, Bank of China Group Investment Limited, CDH Investments, Ascendent Capital Partners, and Boying Investment Limited (collectively, "Buyer Consortium").

2.      On June 7, 2017, SciClone's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Silver.  Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by SciClone's stockholders, Merger Sub will merge with and into SciClone, with SciClone continuing as the surviving corporation and subsidiary of Parent, and SciClone's stockholders will receive $11.18 in cash for each share of SciClone they own.

3.      On August 2, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

# PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of SciClone common stock.

9. Defendant SciClone is a Delaware corporation and maintains its principal executive offices at 950 Tower Lane, Suite 900, Foster City, California 94404. SciClone common stock is traded on the NasdaqGS under the ticker symbol "SCLN."

10. Defendant Jon S. Saxe ("Saxe") has served as a director of SciClone since August 2000 and as Chairman of the Board since July 2009.

11. Defendant Friedhelm Blobel ("Blobel") has served as a director, President, and Chief Executive Officer ("CEO") of SciClone since June 2006.

12. Defendant Nancy T. Chang ("Chang") has served as a director of SciClone since September 2013.

13. Defendant Richard J. Hawkins ("Hawkins") has served as a director of SciClone since October 2004.

14. Defendant Gregg Anthony LaPointe ("LaPointe") has served as a director of SciClone since March 2009.

15. Defendant Simon Li ("Li") has served as a director of SciClone since January 2013.

16. The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17. Defendant Parent is a company organized under the laws of the Cayman Islands and a party to the Merger Agreement.

18. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

# CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of SciClone (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of July 25, 2017, there were approximately 52,191,854 shares of SciClone common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company*

26. SciClone is a revenue-generating, specialty pharmaceutical company with a substantial commercial business in China and a product portfolio spanning major therapeutic markets including oncology, infectious diseases, and cardiovascular disorders. SciClone's proprietary lead product, ZADAXIN (thymalfasin), is approved in over 30 countries and may be

used for the treatment of hepatitis B (HBV), hepatitis C (HCV), and certain cancers, and as an immune system enhancer, according to the local regulatory approvals. Product sales of $41.6 million or 93% and $36.5 million or 94%, for the three months ended June 30, 2017 and 2016, respectively, related to consolidated sales of ZADAXIN. The Company has successfully in-licensed and commercialized products with the potential to become future market leaders and to drive the Company's long-term growth, including DC Bead, a novel treatment for liver cancer. Through its promotion business with pharmaceutical partners, SciClone also markets multiple branded products in China.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

27. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

29. *First*, the Proxy Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"). The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

30. For example, the Proxy Statement indicates that Lazard performed its Sum-of-the-Parts Discounted Cash Flow Analysis by using the "estimated unlevered free cash flows to be generated by each of the Company's products and product candidates, estimated future net cash and the estimated future general and administrative expenses, which we refer to herein as unallocated G&A, to be incurred by the Company, in each case from June 30, 2017 through December 31 of the terminal year." Specifically, Lazard used the following unlevered free cash

flows for the following: (i) For Zadaxin, Lazard used the Company's estimated unlevered Zadaxin-based free cash flows through 2024; (ii) For the product pipeline of the Company, Lazard used the Company's estimated unlevered free cash flow for the product pipeline for 2027; (iii) For the products the Company distributes on behalf of Pfizer and Baxter, Lazard apparently performed a discounted cash flow analysis through December 31, 2019, and for DC Bead, Lazard performed an eight-year discounted cash flow analysis; and (iv) For unallocated G&A, Lazard used the Company's estimated unlevered free cash flow for the unallocated G&A for 2027.

31. The Proxy Statement, however, fails to disclose any the Company's unlevered free cash flows for each of the Company's products and product candidates, estimated future net cash, and the estimated future general and administrative expenses. The Proxy Statement must disclose these unlevered free cash flows, as well as the line items used to calculate the unlevered free cash flows.

32. With respect to Lazard's Sum-of-the-Parts Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the Company's unlevered free cash flows to be generated by each of the Company's products and product candidates, estimated future net cash, and the estimated future general and administrative expenses, as well as the line items used to calculate the unlevered free cash flows; (ii) the inputs and assumptions underlying the discount rate range of 9.5% to 11.5%; (iii) Lazard's bases for applying each of the terminal growth rate ranges for each of the Company's products and product candidates, and the estimated future general and administrative expenses; (iv) the exit multiples implied from the analysis; and (v) the Company's estimated cash balance as of July 30, 2017, as used by Lazard in its analysis.

33. With respect to Lazard's 2018 Selected Companies Analysis and 2017 Selected Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by Lazard in the analyses.

34. With respect to Lazard's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Lazard in the analysis.

1    35.    With respect to Lazard's Premia Paid Analysis, the Proxy Statement fails to
2 disclose the "specialty pharmaceutical transactions" that Lazard selected in its analysis, as well
3 as the individual premium observed for each transaction.

4    36.    The omission of this material information renders the Proxy Statement false and
5 misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Opinion of
6 the Company's Financial Advisor"; and (ii) "Certain Financial Projections."

7    37.    *Second*, the Proxy Statement omits material information regarding potential
8 conflicts of interest of the Company's officers.

9    38.    For example, the Proxy Statement states that: "The parties did not discuss any
10 employment or similar arrangements for any of the Company's executives after the transaction
11 during the negotiations between the parties.  As such, while certain members of management
12 may continue to remain employees of the Company after the completion of the transaction, no
13 employment agreements or similar arrangements were or have been implemented in connection
14 with discussions with the Buyer Consortium."  It also states that "the officers of the Company
15 immediately prior to the effective time will continue their employment as the officers of the
16 surviving corporation until their respective successors have been duly elected or appointed and
17 qualified or until their earlier death, resignation or removal in accordance with the surviving
18 charter and the by-laws."

19    39.    Thus, defendants acknowledge that the Company's officers will continue to be
20 employed after the closing of the Proposed Transaction, but the Proxy Statement fails to disclose
21 the timing and nature of all communications regarding the continued employment of SciClone's
22 officers, including who participated in all such communications.

23    40.    Communications regarding post-transaction employment during the negotiation of
24 the underlying transaction must be disclosed to stockholders.  This information is necessary for
25 stockholders to understand potential conflicts of interest of management and the Board, as that
26 information provides illumination concerning motivations that would prevent fiduciaries from
27 acting solely in the best interests of the Company's stockholders.

28    41.    The omission of this material information renders the Proxy Statement false and

misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Interests of our Directors and Executive Officers in the Merger — Quantification of Potential Payments to our Named Executive Officers in Connection with the Merger."

42. *Third*, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's financial advisor, Lazard.

43. The Proxy Statement fails to disclose whether Lazard has provided any services to SciClone or any members of the Buyer Consortium in the past three years and, if so, the amount of compensation Lazard has earned for those services.

44. The full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following section of the Proxy Statement: (i) "Background of the Merger"; and (ii) "Opinion of the Company's Financial Advisor."

46. *Fourth*, the Proxy Statement omits material information relating the background leading to the Proposed Transaction.

47. For example, the Proxy Statement indicates that the Company entered into confidentiality agreements with approximately 47 potential bidders, but it fails to disclose whether those confidentiality agreements contained standstill and/or "don't ask, don't waive" provisions that are preventing those counterparties from submitting topping bids to acquire the Company or requesting a waiver of standstill provisions.

48. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to SciClone's stockholders.

# COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and SciClone**

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. SciClone is liable as the issuer of these statements.

52. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

53. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

55. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

56. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

# COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Silver

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. The Individual Defendants and Silver acted as controlling persons of SciClone within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of SciClone and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

60. Each of the Individual Defendants and Silver was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

61. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

62. Silver also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

63. By virtue of the foregoing, the Individual Defendants and Silver violated Section 20(a) of the 1934 Act.

64. As set forth above, the Individual Defendants and Silver had the ability to exercise control over and did control a person or persons who have each violated Section 14(a)

of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  August 17, 2017                **LEVI & KORSINSKY, LLP**

By:  */s/ Rosemary M. Rivas*
Rosemary M. Rivas
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff*

1  **OF COUNSEL:**

2  **RIGRODSKY & LONG, P.A.**
Brian D. Long, (to be admitted *pro hac vice*)
3  2 Righter Parkway, Suite 120
Wilmington, DE 19803
4  Telephone: (302) 295-5310
Facsimile: (302) 654-7530

# CERTIFICATION OF PLAINTIFF

I, Matthew Sciabacucchi ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the SciClone Pharmaceuticals, Inc. (NasdaqGS: SCLN) security that is the subject of this action during the class period is/are as follows:

PURCHASES

| Buy Date | Shares | Price per Share |
|---|---|---|
| 3/1/10 | 5 | $3.50 |
|  |  |  |
|  |  |  |
|  |  |  |

SALES

| Sell Date | Shares | Price per Share |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.  During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of August, 2017.

_____
Matthew Sciabacucchi